**UNITED STATES of America**

v.

**Elishas GEORGE and Elizabeth George.**

**Civ. No. 10889.**

United States District Court
D. Connecticut.

March 24, 1965.

As Corrected April 20, 1965.

Jon O. Newman, U. S. Atty., Howard R. Moskof, Asst. U. S. Atty., New Haven, Conn., for plaintiff.

Elishas George and Elizabeth George, pro se.

ZAMPANO, District Judge.

This is a motion by the government to dissolve a temporary restraining order, signed by this Court on March 17, 1965, and to withdraw the complaint.

On March 17, 1965, at approximately 11:30 A.M., an attorney for the government, on behalf of the Veterans Administration Hospital located in West Haven, Connecticut, orally applied to this Court for an order granting permission to administer blood transfusions to an emergency patient, Elishas George, in order to save his life. The patient refused to allow the medical staff to administer the blood transfusions on the ground he was a Jehovah's Witness and such transfusions were contrary to his religious belief. Upon being informed that the patient's condition was "precarious" but not extreme, this Court refused to act on the oral application. Thereafter the government brought this civil action with service upon both Mr. and Mrs. George, and set the matter down for hearing on March 18, 1965. Compare; Application of the President and Directors of Georgetown College, Inc., 118 U.S.App. D.C. 90, 331 F.2d 1010, 1011 (1964) (Miller, J., dissenting).

However, at approximately 6:30 P.M., on March 17, 1965 the Court received a telephone call from the government's attorney and was informed the patient's condition had become critical. Further, the government had prepared, pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, written application for a temporary restraining order supported by an affidavit from the treating physician which stated the Court's order was now necessary to save the patient's life.

The Court arrived at the hospital at 8:00 P.M. and until 10:15 P.M. interviewed five doctors, Mrs. George, Mr. George, Mrs. Gradie George, mother of the patient, and several members of the Jehovah's Witnesses sect. Both Mr. and Mrs. George expressly declined the Court's offer to appoint counsel of their own choosing or to be represented by an attorney selected by the Court.

On March 15, 1965, George, the 39 year old father of four children, voluntarily admitted himself to the hospital for treatment of a bleeding ulcer. Although bleeding seriously from his gastrointestinal tract, he refused blood transfusions. Both George and his wife were Jehovah's Witnesses, the teaching of which sect prohibited the transfusion of blood into the body. The patient and his wife signed releases, relieving the hospital and its employees of any civil liability for any injury which followed from the lack of blood transfusions.

The medical testimony was clear the blood loss was so great that standard medical care dictated the administration immediately of at least five pints of whole blood. The laboratory tests indicated he had already lost 60 to 65% of his red blood cells. His condition was grave, and any further bleeding, without blood transfusion, would most likely lead to shock and probable death. Psychiatric reports indicated the patient showed a lack of concern for life, and a somewhat fatalistic attitude about his condition was described as "a variant of suicide."

Mr. George appeared to the Court to be coherent, rational and rather strong. However, doctors in attendance agreed his outward appearance was deceiving and his internal condition was most serious. When the Court introduced himself, George's first remarks were that he would not agree to be transfused but would in no way resist a court order permitting it, because it would be the Court's will and not his own. His "conscience was clear", and the responsibility for the act was "upon the Court's conscience." He stated he would rather die than agree to a transfusion. The Court advised George it had no power to force a transfusion upon him, and he was free to resist the transfusion, even by the rather simple physical maneuver of placing his hand over the area to be injected by the needle. George stated he would "in no way" resist the doctors' actions once the Court's order was signed.

Mrs. George, citing certain passages from the Bible, was adamant in her opposition to the transfusions. She insisted that the Court had no right to order the transfusion in violation of their religious beliefs. Two other Jehovah's Witnesses, visiting the patient, concurred in Mrs. George's remarks.

The patient's mother, Mrs. Gradie George, not a member of the sect, informed the Court her son has been a Jehovah's Witness for two years, and she favored the transfusions.

The Court thereupon signed the order allowing the hospital to "administer such blood transfusions as are in the opinion of the physicians in attendance necessary to save the patient's life." Moreover, the Court ordered another hearing on the motion on March 26, 1965, or "at such time as may be requested by the patient, his wife, or their legal representative." To date, neither the Georges nor their legal representative have petitioned the Court to dissolve the order.

In most significant respects the instant case is similar to Application of the President & Directors of Georgetown College, Inc., 118 U.S.App.D.C. 80, 331 F.2d 1000 (1964), cert. denied Jones v. President and Directors of Georgetown College, Inc., 377 U.S. 978, 84 S.Ct. 1883, 12 L.Ed.2d 746 (1964), wherein Judge

Wright issued an order comparable to the one issued by this Court. Both patients were suffering from bleeding ulcers and required immediate lifesaving blood transfusions. Both patients refused to be transfused on religious grounds; both were Jehovah's Witnesses. Furthermore, at the time of the hearing in the present case it could not be said with certainty the releases executed by the Georges completely absolved the doctors in attendance of all civil and criminal liability. However, in Judge Wright's case the patient was found to be, in effect, *non compos mentis,* whereas in the present case the patient was found by the Court to be coherent and rational.

Although the patient here appeared to have possessed greater rational capacity than the patient involved in the Georgetown College case, supra, this variance does not compel dissimilar results. Helpful guidelines are found in Judge Wright's opinion, and, where applicable, his rationale is adopted.

In addition to the factors weighed by Judge Wright one consideration is added to the scale. In the difficult realm of religious liberty it is often assumed only the religious conscience is imperiled. Here, however, the doctor's conscience and professional oath must also be respected. In the present case the patient voluntarily submitted himself to and insisted upon medical care. Simultaneously he sought to dictate to treating physicians a course of treatment amounting to medical malpractice. To require these doctors to ignore the mandates of their own conscience, even in the name of free religious exercise, cannot be justified under these circumstances. The patient may knowingly decline treatment, but he may not demand mistreatment. Therefore, this Court, as Judge Wright, "determined to act on the side of life" in the pending emergency. 331 F.2d at 1010.

The Court was informed that a series of transfusions have commenced since the signing of the order. No request has been made by the Georges or their counsel to test the legality of the order.

However, on March 22, 1965, the government filed the present motion to dissolve the temporary restraining order and to withdraw the complaint. Supported by affidavits, the government alleges that the patient is no longer *in extremis* and is now sufficiently physically rehabilitated to determine with reflection and study the propriety of continued blood transfusions for his own complete recovery.

Accordingly, the motion is granted.