**In the Matter of Charles P. OSBORNE.**

**No. 6630.**

District of Columbia Court of Appeals.

Argued July 12, 1972.

Decided July 12, 1972.

Opinion Issued Aug. 31, 1972.

Lawrence A. Miller for petitioner Cafritz Memorial Hospital. James S. Suskin, Washington, D. C., also entered an appearance for petitioner.

Lawrence Speiser, Washington, D. C., for respondent Osborne.

Before GALLAGHER, NEBEKER and YEAGLEY, Associate Judges.

NEBEKER, Associate Judge:

This is an appeal, expedited of necessity, from an order of Judge Bacon of the Superior Court refusing to appoint a guardian to give consent for the administration of a blood transfusion to a patient, a member of the Jehovah's Witnesses faith, who was receiving emergency treatment at a hospital. The case originated by the hospital's petition which was accompanied by an affidavit. After two hasty hearings, ably conducted by Judge Bacon—one in her home the night of the accident and the other the following day on a request for reconsideration—the case came on for emergency consideration by this court. We directed a third hearing at the bedside of the patient. Judge Bacon asked Lawrence Speiser, Esquire, to attend and represent the patient and his family. In the meantime, we listened to a tape recording of the second hearing. Immediately upon completion of the bedside hearing, we had portions of the transcript read to us over the telephone from the hospital. Counsel then returned to the court house and we heard argument on behalf of the hospital and the patient. We then affirmed Judge Bacon's order and indicated an opinion would follow.

The 34-year-old patient was admitted to the hospital with injuries and internal bleeding caused when a tree fell on him. As the need for whole blood became apparent, the patient refused to give his consent for the necessary transfusion. The patient's wife also refused the required consent. Both gave as reasons their religious beliefs which forbid infusion of whole blood into the body.

When the petition was brought to Judge Bacon's home the night of the accident, the patient's wife, brother, and grandfather were present. They stated the views of the patient and agreed with them, explaining that those views are based on strong religious convictions. The grandfather explained that the patient "wants to live very much. . . . He wants to live in the Bible's promised new world where life will never end. A few hours here would nowhere compare to everlasting life." His wife stated, "He told me he did not want blood—he did not care if he had to die."

Judge Bacon then correctly became concerned with the patient's capacity to make such a decision in light of his serious condition. She also recognized the possibility that the use of drugs might have impaired his judgment and ability for choice. Counsel for the hospital advised that the patient, though receiving fluid by vein, was conscious when spoken to by a staff physician, knew what the doctor was saying, understood the consequences of his decision, and had with full understanding executed a statement refusing the recommended transfusion and releasing the hospital from liability.

Judge Bacon took note of a possible overriding state interest based on the fact that the patient had two young children. It was concluded, however, that the maturity of this lucid patient, his long-standing beliefs [1] and those of his family did not justify state intervention. At the hearing on the motion for reconsideration, it was revealed that a close family relationship existed which went beyond the immediate members, that the children would be well cared for, and that the family business would continue to supply material needs.

When the case was first presented to this court, we viewed it as unclear whether the patient would desire to continue his present physical life. We therefore directed the bedside hearing to dvelop that point without the exclusive use of what might be called hearsay statements. We also directed Judge Bacon to ask the patient whether he believed that he would be deprived of the opportunity for "everlasting life" if transfusion were ordered by the court. His response was, "Yes. In other words, it is between me and Jehovah; not the courts. . . . I'm willing to take my chances. My faith is that strong." He also stated, "I wish to live, but with no blood transfusions. Now, get that straight."

Judge Bacon was careful also to determine the extent, if any, of impairment of judgment or capacity for choice resulting from the use of drugs. She was informed that the patient was not then under the influence of any medication having such possible or usual side effects.

Further inquiry was then made of the patient's wife concerning the material and filial welfare of the two children. She responded:

"My husband has a business and it will be turned over to me. And his brothers work for him, so it will be carried on. That is no problem. In fact, they are working on it right now. Business goes on.

"As far as money-wise, everybody is all right. We have money saved up. Everything will be all right. If anything ever happens, I have a big enough family and the family is prepared to care for the children."

In the past a few courts have considered whether to compel religiously rejected medical care. *See generally* Annot., 9 A.L.R.3d 1391 et seq. (1966). The issue is always whether there is sufficient state interest to override individual desires based on religious beliefs.[2] The degree of state interest justifying intrusion by court order has been viewed as "compelling". John F. Kennedy Memorial Hospital v. Heston, 58 N.J. 576, 279 A.2d 670, 674 (1971). As is most often the case, factual situations vary with the result reached. In some cases the patient is comatose and his religious views must be expressed by family members or friends. In other cases, like this one, the patient is fully capable of making the choice. That is one reason why we directed the bedside hearing. Whenever possible it is better for the judge to make a first-hand appraisal of the patient's personal desires and ability for rational choice. In this way the court can always know, to the extent possible, that the judgment is that of the individual concerned and not that of those who believe, however well-intentioned, that they speak for the person whose life is in the balance. Thus, where the patient is comatose, or suffering impairment of capacity for choice, it may be better to give weight to the known instinct for survival which can, in a critical situation, alter previously held convictions. In such cases it cannot

---

1. His father had died a few months before and the family had stood by the father's decision to refuse blood then. The wife said, "[W]e all made a decision similar to this."

2. No case has come to light where refusal of medical care was based on individual choice absent religious convictions.

be determined with certainty that a deliberate and intelligent choice has been made.

Another circumstance which is often present in cases like this is the existence of children, whose lives, if yet unborn, are also at stake,[3] or whose welfare, as survivors, may be unclear. In those cases, it seems less difficult for courts to find sufficient state interest to intervene and circumvent religious convictions. But even then, it is important to note that courts may be more controlled by the interest of the surviving children when there is lack of clarity respecting first-hand knowledge that the patient's current choice is competently maintained.[4]

An additional consideration which impelled us to order the bedside hearing was doubt on the initial record whether the patient, if forced to undergo the blood transfusion, would consider himself blameless to the extent that his religious life would be unaffected. We therefore obtained knowledge of the patient's beliefs respecting his view of accountability to God should he have no choice in the matter. In United States v. George, 239 F.Supp. 752 (D. Conn.1965), the court was faced with a patient who took the view that if forced "[h]is 'conscience was clear', and the responsibility for the act was 'upon the court's conscience.' . . . " *Id.* at 753. The patient in *George* stated he would not resist a court-ordered blood transfusion. It seemed possible that the same view would be taken by this patient if he were questioned in the same way. However, he expressed the belief that he was accountable to God, in the sense of a loss of everlasting life, if he unwillingly received whole blood through transfusion.

■ Thus Judge Bacon and this court were faced with a man who did not wish to live if to do so required a blood transfusion, who viewed himself as deprived of life everlasting even if he involuntarily received the transfusion, and who had, through material provision and family and spiritual bonds, provided for the future well-being of his two children. In reaching her decision, Judge Bacon necessarily resolved the two critical questions presented—(1) has the patient validly and knowingly chosen this course for his life, and (2) is there compelling state interest which justifies overriding that decision?[5] Based on this unique record, we have been unable to conclude that judicial intervention respecting the wishes and religious beliefs of the patient was warranted under our law. Judge Bacon's decision is supported by available evidence to the degree of certainty respecting the two basic questions.

■ A further point is worthy of mention since cases of this nature are very apt

---

3. That was the situation in John F. Kennedy Memorial Hosp. v. Heston, 58 N.J. 576, 279 A.2d 670 (1971).

4. Lack of current capacity to make a valid choice was a decisive factor for Judge Wright in Application of President & Directors of Georgetown College, Inc., 118 U.S.App.D.C. 80, 87, 331 F.2d 1000, 1007 (1964). It would seem to follow from Judge Wright's approach that those in a position to monitor a patient and authorize previously rejected medical care may be required to continuously update the patient's desires. But we are not here dealing with a case where deterioration of capacity for choice reaches a point where previous rejection of medical procedures may be deemed reasonably altered at a time when the life can still be saved.

5. It would be unnecessary to consider the first question if we were to take the view discussed by Judge Weintraub in John F. Kennedy Memorial Hosp. v. Heston, *supra* note 3, that the state must have a compelling interest in sustaining life. The notion that the individual exists for the good of the state is, of course, quite antithetical to our fundamental thesis that the role of the state is to ensure a maximum of individual freedom of choice and conduct.

to arise in the future. Counsel for the hospital ably and commendably represented the hospital in insuring that it and the hospital staff did all they reasonably could do within their power to save the patient's life by acceptable medical procedures. Such was not only a duty, but a laudatory goal. Judge Bacon, however, appeared to recognize a need for experienced and able counsel to make independent inquiry of the patient and to represent his interests before the court. This procedure should, when possible, be followed in future cases of this nature. It is recognized that a proceeding like this lacks many of the characteristics of the usual adversary litigation. However, such counsel can, as is often done in criminal cases, make independent threshold observations respecting competence. He can also assist in determining facts respecting the welfare of survivors.

It was with commendable insight that Judge Bacon sought for the patient and his family the very able assistance of Mr. Speiser. We express to both counsel our appreciation for a most difficult and well-done job.[6]

The judgment previously entered shall stand as our judgment on mandate.

YEAGLEY, Associate Judge (concurring):

Although I concur in the court's opinion, I would add that the thrust of the opinion in my view, while based on the first amendment, is not, despite footnote two, based solely on religious freedom, but also on the broader based freedom of choice whether founded on religious beliefs or otherwise.

6. We are also advised that the patient has recovered though his chances were very

slim and that he has been discharged from the hospital.