## BROWARD GENERAL MEDICAL CENTER v. OKONEWSKI.
No. 77-14026.
### In re INFANT OKONEWSKI.
No. 77-14027.
Circuit Court, Broward County.

September 1 and 3, 1977.

Ellen Mills Gibbs, Fort Lauderdale, for the petitioner.

Robert R. Wills, Assistant Public Defender, Fort Lauderdale, guardian ad litem.

Lawrence L. Korda, Assistant Public Defender, Fort Lauderdale, for the guardian ad litem.

Martin Brooks, Hollywood, amicus curiae.

STEPHEN R. BOOHER, Circuit Judge.

*Order, September 1, 1977:* This cause came on to be heard upon an application by the petitioner, North Broward Hospital District, d/b/a Broward General Medical Center, for an order to

compel emergency medical treatment, specifically life-saving medical aid to Linda Okonewski, defendant in Case No. 77-14027, and with respect to the unborn and to-be-born child of Linda Okonewski, in Case No. 77-14026, based upon the religious beliefs of Linda Okonewski, and the court having heard extensive testimony in this matter, argument of counsel, and being otherwise fully advised in the premises, finds as follows —

1. That this court has jurisdiction over the defendant, Linda Okonewski.

2. That this court has absolute jurisdiction over the unborn child of Linda Okonewski, under Chapters 39 and 827, Florida Statutes.

3. That the administrator of Broward General Medical Center, Mr. Jack Stephens, has communicated thoroughly with the physicians of the defendant, Dr. Warren Greenberg, the treating obstetrician, and Dr. Michael Halle, the treating pediatrician, with respect to the medical conditions, complications and consequences involved, and the defendant has been well advised of such medical conditions, complications and consequences. These communications have been extended not only to the defendant, Linda Okonewski, but to her husband, Robert Okonewski, and to the defendant's mother, Mrs. Orberg, all of whom are aware of the position of the hospital and the physicians in this case. They have actual notice of the medical opinions of the doctors and of the hospital that should blood transfusions be necessary they would seek the court's assistance in having them administered. The finding of notice of the hospital's position is amply supported by the appearance of Martin Brooks, Esq., who indicated he was consulted by the Okonewskis; however, was not retained.

4. That the court received a telephone call from Mrs. Orberg, mother of the defendant Linda Okonewski, to which the attorney for the North Broward Hospital District and Martin Brooks, Esq. were participants. Mrs. Orberg related to the court that she had transported Linda Okonewski to the Broward County courthouse for the purpose of attending the hearing on this matter, and upon reaching the courthouse, Linda Okonewski was met by her husband, who proceeded together with Linda Okonewski to get into a car and leave the courthouse.

5. That the defendant, Linda Okonewski, and her husband and mother, have actual notice of the pendency of these proceedings; they had the opportunity to be present and to offer testimony on behalf of their position; however, chose not to avail themselves of such opportunity.

6. That, in the absence of their decision or their opportunity to appear in this court and their decision not to do so, the court,

exercising its authority under the laws of the Florida, appointed a guardian ad litem to represent the best interest and welfare of the child to be born.

7. That all federal and state constitutional requirements of procedural and substantive due process have been satisfied, and that the court therefore has jurisdiction to consider the issues presented.

8. The court finds, based upon the testimony and the thorough cross-examination and inquiry of Dr. Greenberg, that the defendant is RH-negative and at 33½ weeks of pregnancy she demonstrated the development of an RH sensitization with a positive RH titer. It has also been determined that she has a transverse lie of the fetus with a low lying anterior wall placenta, with a 95% surety of a placenta previa. In addition, she is known to be a Class A diabetic.

9. That this court accepts the testimony of Warren Greenberg, M.D., that, in the event this Caesarean Section is performed, with the size of the uterine artery at this time, there could be a rapid loss of blood and insufficient time to go about the deliberate process of typing the blood for the defendant, that the risk of not having the blood typing in advance of the operation and the necessary blood available at their disposal is an unacceptable risk and one that this court, under the applicable authority, could not approve.

10. Further testimony indicated that an anesthesiologist would not administer the anesthesia for a Caesarean Section without the necessary blood being available prior to the commencement of such surgery.

11. That the testimony of Mr. Jack Stephens, hospital administrator, and Dr. Greenberg, treating obstetrician, indicates that the mother, being aware of all these medical problems, will not consent to any blood transfusion if the necessity presents itself, based upon her religious beliefs.

12. That the court finds that the situation is therefore life threatening to the defendant, Linda Okonewski, if transfusion, in the medical judgment of the treating physician, is necessary and there is no order to so perform.

13. The court finds that all of the testimony of Dr. Greenberg was carefully qualified as being based upon reasonable medical probability or certainty.

14. With respect to the mother, Linda Okonewski, the court finds that it has the authority to enter the order because the mother, while fully competent mentally, is in physical danger; that she is already the mother and parent of a minor child, with another expected, and that because of that fact, despite her competency and her choice with respect to refusing a transfusion, the court has

the authority to order life saving medical treatment. That authority is the parens patriae authority of the state acting through this court with respect to matters affecting a child's welfare. The court relies on the authority of *United States v. George,* (1965, D.C. Conn.) 239 F. Supp. 752, and *Application of President & Directors of Georgetown College, Inc.* (1964) 118 App. D.C. 80, 331 F2d 1000, 9 ALR 3d 1367.

The court finds as to the Infant Okonewski as follows —

15. The testimony indicates that the child is 36½ weeks into the gestation period and well past any court decision as to being a separate individual with the rights of a separate individual and the infant, having no voice, is entitled to and in need of the representation of a guardian ad litem.

16. That the testimony of Michael A. Halle, M.D., indicates that the unborn child stands a 45% chance of developing jaundice and complications thereof. If the child is born jaundiced or pale, or both, or if there is obvious edema, or if the liver and spleen of the child are greatly enlarged, an exchange transfusion must be performed on this child immediately after birth. If the baby's clinical condition at birth appears good, but if the direct Coombs test result is positive, if the cord hemoglobin is less than 11 gm%, or if the cord bilirubin is greater than 4 mg%, an exchange transfusion will have to be carried out as soon as possible. If an exchange transfusion is not carried out under the above conditions, the resulting complications would be mental and/or motor retardation and/or death.

17. That an additional factor exists, namely that which was testified by Drs. Greenberg and Halle, that any delay beyond September 1, 1977, will accelerate the injury apprehended, will increase by every day of delay the risk to the infant and that the situation is life threatening to the child and that the doctors treating that child must have the right to transfuse and must be ordered to transfuse in order to save the life of the infant.

18. The court finds that all of the testimony of Dr. Halle was carefully qualified as being based upon reasonable medical probability or certainty.

19. With respect to the authority of the court, as to Infant Okonewski, the court relies upon the inherent authority of the court exercising equity jurisdiction with respect to minors and that authority dates from the beginning of Anglo-American jurisprudence, and, in addition, to Chapters 827 and 39, Florida Statutes, as well as the case of *In Interest of Levy,* 319 So.2d 53 (Fla. App. 1975).

The court further finds that the above recitation of facts gives the petitioner *jus tertii* standing to represent the interest of all other medical facilities and physicians within the state of Florida who may be faced with similar problems with respect to this defendant and the child to be born. The court feels that the exercising of jurisdiction to all other medical facilities and physicians similarly situated, even though they are not denominated in this action and it has not been presented as a class action, is justified because the medical facilities and physicians, although not named parties, run the danger — if they are charged with the treatment of the defendant and the to-be-born child and do not do what in their medical judgment is necessary — of facing not only civil but also criminal penalties.

Based upon the foregoing, it is ordered and adjudged as follows—

1. That this court has jurisdiction over the defendant, Linda Okonewski.

2. That this court has absolute jurisdiction over the unborn child of Linda Okonewski, under Chapters 39 and 827, Florida Statutes.

3. The court ratifies and confirms its previous appointment of Robert R. Wills of the Broward County Public Defenders' Office as the guardian ad litem of the unborn and to-be-born Infant Okonewski.

4. That the North Broward Hospital District, d/b/a Broward General Medical Center, and all other medical facilities in the state of Florida, Warren M. Greenberg, M.D., treating obstetrician, Michael A. Halle, M.D., treating pediatrician, and all other physicians in the state of Florida, including but not limited to obstetricians, pediatricians, anesthesiologist, staff physicians, assisting operating room physicians, who may be called upon to treat the defendant, Linda Okonewski and her unborn child and such child after birth, are

a. authorized and ordered by the court, with or without the consent of the defendant, her husband or her mother, Mrs. Orberg, to provide such medical care and treatment as in the medical judgment of such medical facilities and physicians they determine to be necessary to save the life of the defendant, Linda Okonewski, and to save the life and prevent physical or mental retardation of her unborn child and such child after birth;

b. to provide such other and further care and treatment including specifically, but not by way of limitation, the removal of blood for blood typing and cross matching, the administration of transfusions, either of whole blood or serum or otherwise, and including but not limited to washed and stacked and

other varieties of blood they deem necessary or advisable in the medical care and treatment of the defendant and her unborn child and such child after birth;

    c. ordered, and it is the intention of the court to order such facilities and physicians, to provide not only life saving care, but such other medical care and treatment as in their medical judgment is deemed necessary for the best interest and welfare of the defendant and her child and such child after birth;

    d. requested and directed to notify the court immediately upon the admission of Linda Okonewski or her unborn child or child after birth, in order that further proceedings may be had before this court as may serve the best interest and welfare of Linda Okonewski and her child to be born or such child after birth.

5. The petitioner, through its agents, servants and employees, the guardian ad litem, through the facilities of the public defenders' office of the seventeenth judicial circuit, the clerk of this court and his deputies, the sheriff of Broward County and his deputies, and the sheriffs and their deputies of the other counties of the state of Florida, are authorized and ordered to communicate a summary of the terms and provisions of this order as quickly as possible, and a copy of this order as soon as practicable thereafter, to all medical facilities in the state of Florida, with first priority being given to the medical facilities in the counties of Palm Beach, Broward, Dade, Monroe, Collier and Lee counties.

6. The sheriff of Broward County and his deputies and the sheriffs and deputies of the respective counties throughout the state of Florida, are called upon, directed and ordered by this court to serve summons, a copy of the pleadings, and the court order in this case upon the defendant, Linda Okonewski, and her husband, Robert Okonewski, if they be found within the jurisdiction of any such county.

7. This court specifically retains jurisdiction of these two cases for the purpose of entering such other and further orders as may be necessary, appropriate or just.

*Order, September 1, 1977:* This cause came on to be heard on the application of Robert R. Wills, temporary guardian ad litem for the unborn Infant Okonewski for an order extending this court's earlier order to include medical facilities and physicians in the state of California; and it appearing that this court has obtained jurisdiction over the Infant Okonewski under Chapter 39, Florida Statutes, relating to dependent children; Chapter 827, Florida

Statutes, relating to child abuse; and under the decisional law; and it further appearing that such jurisdiction has been retained in order to enter such other and further orders as are necessary for the best interests of the child and that the mother and child have left the state of Florida in order to avoid the orders of this court, it is ordered and adjudged as follows —

1. That this court has jurisdiction over the unborn child and the subject matter of the application of the temporary guardian ad litem, and that the best interests of the unborn child dictate that said application be and the same is, therefore, granted.

2. That the Fountain Valley Community Hospital, Orange County, California, and all other medical facilities in the state of California, the treating obstetrician, the treating pediatrician, and all other physicians in the state of California, including, but not limited to, obstetricians, pediatricians, anesthesiologists, staff physicians, assistant operating room physicians, who may be called upon to treat the unborn child of Linda Okonewski and such child after birth, are ordered to comply with all of the provisions of paragraph 4 of this court's order entered the 1st day of September, 1977, pertaining to the to-be-born Infant Okonewski.

It is requested that this order be given full faith and credit by the courts in the state of California.

*Order, September 3, 1977:* This cause came on for further consideration on September 2, 1977, on the motion for additional relief filed by Robert R. Wills, assistant public defender, guardian ad litem for the Infant Okonewski, and the court having considered the same, and the further testimony of Warren M. Greenberg, M.D., Michael Halle, M.D. and Robert R. Wills, assistant public defender, guardian ad litem, and being otherwise duly advised in the premises, finds as follows — (i) the Infant Okonewski is a person in the eyes of the law, even though unborn, and is entitled to the protection of the law for its well-being, since the infant has passed the 32-weeks gestation period, has "quickened," and is alive *en ventre sa mere* [compare: *Raleigh Fitkin-Paul Morgan Memorial Hospital v. Anderson*, 42 N.J. 421, 201 A. 2d 537 (1964) ; *cert. den.* 377 U.S. 985, 84 S.Ct. 1894 (1964)]; (ii) the Infant Okonewski is a "child" within the meaning of Section 39.01(6), Florida Statutes, and the court finds the infant to be a "dependent child" because said child is being deprived of proper parental care and of care necessary for its well-being, within the provisions of Sections 39.01(10)(c) and 39.01(10)(d), Florida Statutes; (iii) that this court obtained jurisdiction over said dependent child upon the filing of these proceedings, pursuant to Sections 39.02(1) and 39.02(3)(a), Florida Statutes, and retains jurisdiction until relin-

quished by further order or until the child reaches 18 years of age (neither of which has occurred), pursuant to Section 39.02(4), Florida Statutes; (iv) that the application for an adjudication of dependency has been properly initiated by the guardian ad litem, because he is a person who has knowledge of the facts or is informed of them and believes that they are true, as provided by Section 39.05(2) Florida Statutes; (v) that the presence of the infant and of the parents of the Infant Okonewski at the hearing determining dependency is not necessary because their present whereabouts is unknown and the court has previously found in its order of September 1, 1977, and again hereby finds that they are evading the jurisdiction and process of this court, within the provisions of Section 39.06(6), Florida Statutes. It is, thereupon, ordered and adjudged as follows —

1. That this court has jurisdiction of the Infant Okonewski, and of the parents of said child, Linda Okonewski and Robert Okonewski, her husband.

2. That the Infant Okonewski is a person in the eyes of the law and is entitled to the protection of the laws of the state of Florida and the state of California.

3. That the Infant Okonewski is hereby found and adjudged to be a dependent child who is not receiving proper parental care and is being deprived of care necessary for its well-being.

4. That the court is advised and believes that the said dependent child is presently in the state of California and is scheduled sometime this week for admission to and surgery at Fountain Valley Community Hospital, Orange County, California.

5. That the courts of California are hereby authorized and requested to assume supervision over the Infant Okonewski on behalf of this court and to provide thereby such care as may be proper and/or necessary for the health and well-being of said infant, including, but not by way of limitation, placing the child under the protective supervision of the court or of such custodian as in the judgment of that court may be necessary or desirable under the circumstances.

6. That this court retains jurisdiction of the parties and of the subject matter of these consolidated causes for the purpose of entering such other and further orders as may be appropriate in the premises.

\* \* \* \* \*

In his affidavit dated August 30, 1977, Dr. Warren Greenberg, the treating obstetrician, said —

1. That I am a medical physician, duly licensed and authorized to practice medicine in the state of Florida and I have been so licensed for 8½ years, and I specialize in the practice of obstetrics/gynecology.

2. That I am the treating physician of Linda Okonewski relating to her term of pregnancy and have personal knowledge of her present and past medical history.

3. That, based upon this medical treatment and personal knowledge, the following facts are related by me concerning Linda Okonewski:

Patient, Linda Okonewski, anticipates delivery of child at Broward General Medical Center by Caesarean Section on September 1, 1977. Patient is a 21-year-old, para 1001, whose last menstrual period was December 19, 1976, and whose due date is September 25, 1977. The patient is known to be a Jehovah's Witness and has been followed by my office for this pregnancy. She had a previous Caesarean Section for celphaleopelvic dysapproportion, delivering quite a large infant. She had initially come to my office for care and for the possibility of allowing a vaginal delivery in her present pregnancy. During her prenatal course, it was discovered that she was RH-negative and at 33½ weeks of pregnancy demonstrated the development of an RH sensitization with a positive RH titer. In the further evaluation of this patient, it was also determined that she had a transverse lie of the fetus with a low-lying anterior wall placenta, possibly a placenta previa. In addition, she is known to be a Class A diabetic.

4. Based upon my observation of the patient, Linda Okonewski, I am in a position to relate the following:

The original plans to deliver her vaginally were abandoned in view of the above complications of obstetrics and a plan to perform a repeat Caesarean Section on this patient on September 1, 1977, was reached after careful discussion with the pediatrician in charge of the infant, Michael Halle, M.D. In view of the previous Caesarean Section scar and in view of the location of the placenta, reported to be by ultrasound over that scar, the patient is at considerable risk for blood loss at the time of her delivery.

In keeping with good medical care and in view of the location of this placenta over the previous Caesarean Section scar, also the area that we would attempt to operate upon in her present pregnancy, it would be estimated that a type and cross match for at least four units of blood prior to her Caesarean Section would medically be in order. Our objective is to deliver her of an infant that will demonstrate minimal RH affectation and yet also demonstrate minimal respiratory distress symptoms based on prematurity. My indications of ultrasound indicate that the fetus is of good size and clinically this thought is confirmed.

The need for blood for this patient would be on an emergency basis and in my medical opinion it would be necessary to have this blood on hand at the time of the Caesarean Section operation. There is a serious risk of maternal well-being and possibly demise if the patient were to have a heavy bleeding episode at the time of the Caesarean Section, rather than the possibility of a chronic slow blood loss which we would more than likely be able to cope with on a routine basis.

5. I again reaffirm my position that the possible emergency need of blood for the mother, Linda Okonewski, would not allow sufficient time to set up a type and request for blood if a hemmorhagic situation arose during surgery. There is a significant risk to this patient in view of morbidity and possibly mortality if there was a need for blood and blood was not available in an emergency situation.

In his affidavit dated August 30, 1977, Dr. Michael Halle, the treating pediatrician, said —

I, Michael A. Halle, M.D., provide the following information in regard to Mrs. Okonewski and her unborn child: I am aware of the fact that she is RH negative and her last pregnancy resulted in an RH positive child. Dr. Greenberg has performed laboratory tests which indicate that Mrs. Okonewski has elevated titers of antibody in her serum. Consequently, it can be determined that her unborn child stands a 45% chance of developing jaundice and complications there of.

If the infant in question should be born jaundiced or pale, or both, or if there is obvious edema, or if the liver and spleen of the child are greatly enlarged, an exchange transfusion must be performed on this child *immediately* after birth. There is a 10% likelihood of this occurring.

If the baby's clinical condition at birth appears good, but if the direct coombs test result is positive, if the cord hemoglobin is less than 11 gm%, or if the cord bilirubin is greater than 4 gm% an exchange transfusion will have to be carried out as soon as possible. Babies in the doubtful category must be watched closely. Analysis of their clinical condition and blood studies should be performed every 4 to 6 hours. Anoraxia, vomiting, lethargy, signs of cerebral irritation, or a rapidly rising curve of bilirubin or a rapdly falling hemoglobin level would make an exchange transfusion mandatory, such children must be observed for a minimum of 4 to 5 days.

If an exchange transfusion is not carried out under the above conditions, the resulting complication would be mental and or motor retardation and or death. The likelihood of these complications in the face of the above indications is in the order of 100%. It should also be noted that an exchange transfusion is an arduous and time consuming procedure, and carries a 3% to 4% risk of death.