Martha TUNE, Plaintiff,

v.

**WALTER REED ARMY MEDICAL HOSPITAL, Defendant.**

Civ. A. No. 85–0697.

United States District Court, District of Columbia.

March 4, 1985.

Martha Tune, pro se.

James P. Schaller, Jackson & Campbell, P.C., Washington, D.C., guardian ad litem.

Royce C. Lamberth, John O. Birch, Asst. U.S. Attys., Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

JACKSON, District Judge.

On the afternoon of February 27, 1985, plaintiff Martha Tune, by her adult son Cecil L. Tune, Jr., acting as next friend, filed a *pro se* civil action against Walter Reed Army Medical Center, entitled "Complaint and Emergency Motion for Removal of Life Support,"[1] in which she describes herself as a 71-year-old patient at the Walter Reed Army Medical Center, Washington, D.C., with terminal adenocarcinoma of the pericardium. She alleges that she is currently being maintained on a respirator, without which she would "immediately experience respiratory arrest and death." While the physicians at the hospital are sympathetic to her desire to die a natural

---

**1.** In accordance with Fed.R.Civ.P. 1 and 8(f), the Court treats the pleading as a complaint for emergency declarative and injunctive relief against the Secretary of the Army, with jurisdiction predicated upon 28 U.S.C. §§ 1331, 1361, and relief available under either the All Writs Act, 28 U.S.C. § 1651, or the Administrative Procedure Act, 5 U.S.C. §§ 706(1) and (2).

death, she says, the policy of the Department of Army (as reported to her by her physicians) precludes the withdrawal of life support systems once placed in operation for a patient at an Army medical facility.[2] Plaintiff prays for an order directing Walter Reed "to remove the artificial life support from her ... to permit her to die with dignity."

The Court has appointed James P. Schaller, Esq., a member of the Bar of this Court with experience in medical litigation, as guardian *ad litem* for plaintiff, and, with the consent of the U.S. Attorney who has agreed to enter an expedited appearance on behalf of defendant, brought the matter on for final hearing and disposition upon oral motion, if possible.

## I.

From the report of the guardian *ad litem,* made orally in open court upon the record, in which defendant, by counsel, concurs in all particulars, the Court finds the following material facts to exist without dispute.

Plaintiff, the widow of an Army officer, with a history of breast cancer treated surgically approximately 10 years ago, was awaiting elective cataract surgery at home when she experienced an onset of shortness of breath and chest discomfort. She was admitted to Walter Reed on February 21, 1985, and placed on the respirator on or about February 23rd. Initially suspected of having pneumonia and being appropriately treated for it, Mrs. Tune underwent cardiac catheterization which revealed the presence of fluid in the pericardial sac and frank cardiac tamponade. The fluid was evacuated, following which Mrs. Tune improved briefly, but cytologic examination of the evacuate demonstrated the presence of the malignant adenocarcinoma. Oncological consultation suggested three possible modalities of treatment, directed primarily at preventing the recurrence of tamponade: medication with tetracycline; surgery, en-

tailing opening the chest and removing the pericardium altogether (with a mean survival prognosis of 10–12 weeks, with progressive debilitation); and a less drastic procedure to fuse the pericardium to the heart. The attending physicians commenced the administration of tetracycline and performed the latter procedure.

Although there has been no recurrence of tamponade, and her cardiac function (following a brief episode of atrial fibrillation restored to normal sinus rhythm) appears normal, Mrs. Tune nevertheless developed sudden and dramatic respiratory difficulty, diagnosed as Adult Respiratory Distress Syndrome (ARDS), and her lungs have continued to deteriorate. Serial X-rays suggest the presence of tumor in the lungs.

The physicians are unanimous in their opinion that without the ventilation afforded by the respirator, Mrs. Tune will promptly die, but the respirator merely postpones the inevitable. Her cancer is terminal. When she was first placed on the respirator the physicians were unaware of the full extent of her illness. In combination, her malignancy and lung disease import a mortality rate approaching 100 percent, and had they known the circumstances they would not have ordered the respirator originally. Having done so, however, they are constrained to continue life support, despite the wishes of patient or family, by Army medical policy.

The guardian *ad litem,* having spoken personally with plaintiff, reports her to be lucid, fully apprised of her medical circumstances by her physicians, and still firm in her resolve to be removed from the respirator. When told by the guardian *ad litem* that if it were done as she wished, she would "very likely quickly die, probably immediately," she acknowledged it, and affirmed that she nevertheless wanted it so, with "no reservations at all." Both her desires and her competence to form them the guardian *ad litem* found evidenced by multiple pages of notes, written recently in

**2.** As a federal institution, Walter Reed is not subject to the provisions of the District of Columbia Natural Death Act, D.C.Code §§ 6–2421 *et seq.,* which would enable her to accomplish her purpose by signing a declaration to that effect in the presence of disinterested witnesses.

her own hand, expressing final sentiments for her family and giving instructions for the disposition of her personal effects, her funeral and interment. When asked by the guardian *ad litem* what she wanted him to ask the Court to do, she wrote a similar note declaring her persistence in her desire to be taken off the respirator.[3]

Plaintiff's two adult children, and their spouses, whom the guardian *ad litem* describes as a "remarkably close and loving family," are in accord with Mrs. Tune's wishes and join with the guardian *ad litem* in his recommendation that the Court grant the relief prayed. Defendant concurs in all but the prayer for relief, as to which it takes no position, although waiving any right to appeal from the Court's decision.

For the reasons hereinafter set forth, the Court will grant the petition and enter an order directing that plaintiff be forthwith disconnected from life support systems.

## II.

All parties in interest being agreed that Mrs. Tune is in full possession of her faculties, and that she herself has expressed the clear and unequivocal desire to be allowed to die naturally, the Court is fortunately not called upon to address the difficult issues presented when the patient is comatose or otherwise incompetent, and a "substituted judgment" must be made. *See, e.g., Matter of Quinlan,* 70 N.J. 10, 355 A.2d 647, *cert. denied sub. nom. Garger v. New Jersey,* 429 U.S. 922, 97 S.Ct. 319, 50 L.Ed.2d 289 (1976); *Superintendent of Belchertown State School v. Saikewicz,* 373 Mass. 728, 370 N.E.2d 417 (1977).

Although the Supreme Court has recognized the primacy of individual autonomy in certain matters of the more intimate and sensitive nature encountered in the course of human affairs, *see, e.g., Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 *reh'g denied,* 410 U.S. 959, 93 S.Ct. 1409, 35 L.Ed.2d 694 (1973); *Carey v. Population Services International,* 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977), it has yet to do so in the context of natural death. *Roe v. Wade, supra,* however, is instructive for purposes of this case, because the Supreme Court there proceeded upon the premise that a competent adult has a paramount right to control the disposition to be made of his or her own body, absent a compelling countervailing governmental interest opposed.

At least two state courts have adapted that premise, under the rubric of a "right of privacy,"[4] to circumstances similar to those presented here. In *Satz v. Perlmutter,* 362 So.2d 160 (Fla.Dist.Ct.App.1978), *aff'd,* 379 So.2d 359 (Fla.1980), a Florida appeals court affirmed a trial court order permitting a competent but terminally ill adult afflicted with amyotrophic lateral sclerosis to be removed from a respirator.[5] More recently, in *Bartling v. Superior Court of the State of California,* 163 Cal. App.3d 186, 209 Cal.Rptr. 220 (1984), a California appellate court held that a competent adult suffering from serious, but not imminently terminal illnesses, had the right, over the objections of his attending physicians and the religiously-affiliated hospital that it would be unethical, to hasten his death by having life support equipment disengaged. The trial court had ruled that life support systems could be

---

3. The Court has ordered the note to be filed as a part of the record. It reads, in its entirety: "I would like to get off the life support system under which I am now having to live." It is signed "Martha A. Tune," timed by the guardian *ad litem* at 7:25 p.m., February 27, 1985.

4. *But see Dronenburg v. Zech,* 741 F.2d 1388 (D.C.Cir.1984).

5. *See also In Re Osborne,* 294 A.2d 372 (D.C. 1972) (refusal of life-saving blood transfusion by Jehovah's Witness upheld). *But see Application of President and Directors of Georgetown College,* 331 F.2d 1000 (D.C.Cir.), *reh'g denied,* 331 F.2d 1010, *cert. denied sub nom. Jones v. President and Directors of Georgetown College,* 377 U.S. 978, 84 S.Ct. 1883, 12 L.Ed.2d 746 (1964) (ordering blood transfusion to be given to Jehovah's Witness to preserve *status quo* pending determination on the merits).

withdrawn only from the comatose and terminally ill, but the court of appeals reversed, declaring that "[t]he constitutional right of privacy guarantees to the individual the freedom to choose to reject, or refuse to consent to, intrusions of his bodily integrity." *Bartling, supra,* 209 Cal.Rptr. at 225.

There appears to be no federal court ruling, in this circuit or elsewhere, determining the rights of *compos mentis* patients in federal institutions who are receiving therapy intended merely to prolong life in the face of mortal illness.[6] But it is now a well-established rule of general law, as binding upon the government as it is upon the medical profession at large, that it is the patient, not the physician, who ultimately decides if treatment—any treatment—is to be given at all. *Canterbury v. Spence,* 464 F.2d 772 (D.C.Cir.), *cert. denied,* 409 U.S. 1064, 93 S.Ct. 560, 34 L.Ed.2d 518 (1972).[7] The principle underlying *Canterbury v. Spence* is, simply, that a competent, mature patient has a right to be fully informed of the possible consequences of a course of treatment before he permits the medical ministrations to begin, and that the attending physicians are in breach of duty to the patient if they initiate treatment without the patient's informed consent. The rule has never been qualified in its application by either the nature or purpose of the treatment, or the gravity of the consequences of acceding to or foregoing it. And at least one corollary pertinent here is necessarily implicit in it: such a patient who enters treatment in ignorance, with or without the physicians' connivance, has the right to insist that treatment be halted once he is fully informed of the consequences and does not wish to incur them.

■■■ Although the Army has compassionately refrained from urging any governmental interest underlying its policy against life support termination which might obtrude upon plaintiff's right to insist upon it here, the various interests which are commonly advanced in like cases include society's concern for the preservation of human life, the prevention of suicide, protection of innocent third parties, and the integrity of medical ethics. Only the first is implicated to any significant extent here.[8]

■■■ But while preservation of life in the abstract is no doubt a transcendant goal for any society which values human life, the state's interest in maintaining life must

---

6. The subject of the right of a patient in a federally-controlled hospital to have life support terminated appears to have arisen judicially only once before. *Foster v. Tourtellotte,* 704 F.2d 1109 (9th Cir.1983), involved a claim for attorney's fees in connection with the case of a mentally competent patient in a Veterans Administration hospital who withdrew his consent to remain on a respirator and then sought a preliminary injunction to enforce his wishes when his doctor refused to comply. A federal district court granted the injunction in an unpublished opinion, but stayed the order to permit an appeal. Before the stay was to expire, however, the patient was declared "brain dead" under a California statute. No appeal having been filed, the machine was disconnected and the patient pronounced dead. The Ninth Circuit did not, therefore, address the merits.

7. Other federal courts have recognized an analagous right on the part of mental patients to resist the forcible administration of antipsychotic drugs, although generally grounding it in the Due Process Clause of the Fourteenth Amendment. *See, e.g., Rogers v. Okin,* 634 F.2d 650 (1st Cir.1980), *vacated and remanded on other* grounds *sub. nom. Mills v. Rogers,* 457 U.S. 291, 102 S.Ct. 2442, 73 L.Ed.2d 16 (1982), *on remand,* 738 F.2d 1 (1st Cir.1984); *Rennie v. Klein,* 653 F.2d 836, *vacated and remanded for further consideration,* 458 U.S. 1119, 102 S.Ct. 3506, 73 L.Ed.2d 1381 (1982), *on remand,* 720 F.2d 266 (3d Cir.1983) (*en banc*); *Bee v. Greaves,* 744 F.2d 1387 (10th Cir.1984).

8. The prevention of suicide is not involved when permission is not being sought to terminate a healthy life by artificial, self-induced means, but merely to allow nature to take its course. *See Saikewicz, supra* 370 N.E.2d at 426, n. 11; *Bartling, supra* 209 Cal.Rptr. at 225–26. Consideration of the rights of innocent third parties is generally limited to situations in which the interests of the patient's dependents may be adversely affected. *See, e.g., President and Directors of Georgetown College, supra* at 1008. And medical ethics incorporates the duties owed the patient, including, among others, administering treatment only with consent in the case of a competent adult.

defer to the right to refuse treatment of a competent, emotionally stable, but terminally ill adult whose death is imminent and who is, therefore, the best, indeed, the only, true judge of how such life as remains to him may best be spent. As the Massachusetts Supreme Judicial Court has said:

> It is clear that the most significant of the asserted State interests is that of the preservation of human life. Recognition of such an interest, however, does not necessarily resolve the problem where the affliction or disease clearly indicates that the life will soon, and inevitably, be extinguished. The interests of the State in prolonging a life must be reconciled with the interest of an individual to reject the traumatic cost of that prolongation. There is a substantial distinction in the State's insistence that human life be saved where the affliction is curable, as opposed to the State interest where, as here, the issue is not whether, but when, for how long, and at what cost to the individual that life may be briefly extended.... The constitutional right to privacy, as we conceive it, is an expression of the sanctity of individual free choice and self-determination as fundamental constituents of life. The value of life so perceived is lessened not by a decision to refuse treatment, but by the failure to allow a competent human being the right of choice.

*Saikewicz, supra* 370 N.E.2d at 425–26.

The Court concludes that these various state interests, viewed singly or in combination as they may be present here, are insufficient to outweigh plaintiff's interest in dying as she chooses. The anguish which now besets her and her family would only be intensified and extended were this Court to rule otherwise than for her, and to no discernible public or private good. The Court holds that competent adult patients of federal medical facilities with terminal illnesses and in the circumstances presented here have a right to determine for themselves whether to allow their lives to be prolonged by artificial means, including the right to demand the cessation of life support once begun.

It is, therefore, for the foregoing reasons, this 28th day of February, 1985,

ORDERED, that judgment is granted for plaintiff, and an order directing the removal of life support will issue forthwith.