465 So.2d 666 (1985)
ST. MARY's HOSPITAL, Appellant,
v.
Mark RAMSEY, Appellee.
No. 85-339.
District Court of Appeal of Florida, Fourth District.
March 27, 1985.
*667 Nancy P. Phillips, of Metzger & Sonneborn, West Palm Beach, for appellant.
Robert P. Foley, West Palm Beach, for appellee.
David Bludworth, State Atty., and Paul O. Moyle, Asst. State Atty., West Palm Beach; for the State of Florida.
LETTS, Judge.
These emergency proceedings[1] arise out of a circuit judge's decision upholding the right of a patient to refuse a blood transfusion without which the patient, might well die within a few hours. We affirm.
The task before us now is much more difficult than the one we faced in Satz v. Perlmutter, 362 So.2d 160 (Fla. 4th DCA 1978), affirmed with opinion, 379 So.2d 359 (Fla. 1980).[2] In that case, we were dealing with an old, terminally ill patient, in full command of his faculties and without minor children. By contrast, none of the foregoing pertain here, except that the patient is mentally alert and fully competent. This particular patient is but twenty-seven years old and though kidney disease requires his regular use of renal dialysis, his life expectancy is probably not unreasonably short if he accedes to the transfusion. Moreover, he is obligated to pay fifty dollars a week in support of his only minor child who lives with his former wife in *668 Michigan. Finally, this particular patient is a Jehovah's Witness and his deeply held faith teaches that ingestion of whole blood will deny him both resurrection and eternal salvation.
In the foreground of this tragic factual backdrop is the state, concerned about possible criminal activity, the treating physician and the hospital, both thwarted by the refusal of the patient to cooperate, apprehensive as to the legal consequences of their acquiescence in the patient's adamant refusal of treatment and genuinely concerned for his welfare. For these reasons, the hospital has most urgently requested our appellate assistance.
The trial judge held that:
1. Mr. Ramsey is intelligent, rational and lucid and has made a competent decision not to accept a blood transfusion knowing he will die.
2. The state and petitioners have not demonstrated sufficient compelling interests to outweigh Mr. Ramsey's constitutional entitlement to privacy and to make this decision without governmental interference.
The basic question to be answered in this case is: Can an adult patient in full command of his faculties refuse a blood transfusion? We answer in the affirmative subject to the four caveats set forth in Perlmutter I: preservation of life, protection of the parties, prevention of suicide and the ethics of medical practice.

PRESERVATION OF LIFE
The preservation of life is not only a laudable goal for the state, for the physicians and for the health care facilities to aspire to, it is a compelling one. However, it is not an unswerving mandate. We have hitherto held that an adult patient has a constitutional right of privacy, a freedom to choose and a right of self-determination. Perlmutter I. Thus if an adult, competent patient refuses a blood transfusion, it would appear he has a right to do so, providing there is no overriding reason why his life should be preserved. Moreover blood transfusions are not without risk and we take judicial notice of the adverse consequences, perhaps abhorrent to the donee, which can arise from a transfusion of impure blood.
The patient's wishes in this case are rendered even more compelling because of the presence of deeply held religious convictions. In this connection, we read with approval the case of In the Matter of Osborne, 294 A.2d 372 (D.C.App. 1972), where the court spoke about the thirty-four year old Jehovah's Witness' preference for everlasting life and salvation rather than a few more waking hours on this earth. It is hard to fault such a deeply held conviction.
As we see it, under the facts presented, this competent, sick adult has the right to refuse a transfusion regardless of whether his refusal to do so arises from fear of adverse reaction, religious belief, recalcitrance or cost. However, that is not to say we would permit him to make that same decision for others. Our conclusion here is restricted to the facts. A much more complex question is presented when a parent or guardian refuses a transfusion for another. This latter action is not an exercise of the right of self-determination, it is an assumed right to determine the destiny of another.

PROTECTION OF THIRD PARTIES
This is probably the most difficult hurdle to overcome in the case at bar. As we said in Perlmutter I, the protection of third parties is exemplified when the refusal of treatment and subsequent death results in the abandonment of minor children. In that case, there was no minor child. In the case at bar, there is a minor daughter. Yet, it is difficult to categorize the refusal of treatment here as an abandonment. First, the primary physical residence of the child is with the mother in another state; as a result the father seldom sees the child. Second, there is evidence in the record that the mother, and both families, will help to support the child. Third and finally, there is evidence that the patient owns a small annuity which names the child as beneficiary. As a consequence, we cannot fault *669 the trial judge for not finding abandonment.

PREVENTION OF SUICIDE
This patient does not want to die. As we said in Perlmutter I, "he really wants to live but do so, God and Mother Nature willing, under his own power. This basic wish to live, plus the fact that he did not self-induce his horrible affliction, precludes his further refusal of treatment being classed as attempted suicide." Perlmutter I, 362 So.2d at 162-163. If there be any doubt remaining about this particular patient's desire to live, it is conclusively extinguished by his willing acceptance of the dialysis treatment, without which his life would assuredly terminate.

ETHICS OF MEDICAL PRACTICE
We can do no more than reaffirm Perlmutter I on this matter and incorporate by reference the language in Superintendent of Belchertown v. Saikewicz, 373 Mass. 728, 370 N.E.2d 417 (1977).
In addition, we cannot accept the premise that those who practice, dispense or furnish medical services in a case such as this, should be held criminally responsible or civilly liable, because they accede to the refusal of a competent adult to undergo treatment which they urge upon him. What is the alternative? Must they insist on his participation in the recommended treatment? Should they, if necessary, be required to administer the treatment by force and against his will? We answer the last two questions in the negative.
We reiterate that the result in this case is restricted to its facts and point to the language in Perlmutter II where our supreme court called for examination of these "inscrutable problems" on a case by case basis.
Certainly, this matter is of great public importance. Accordingly, we hereby certify the following question to our Supreme Court:
CAN A COMPETENT ADULT PATIENT REFUSE A BLOOD TRANSFUSION WITHOUT WHICH HE MAY WELL DIE?
AFFIRMED.
DELL, J., concurs.
ANSTEAD, C.J., concurs in conclusion only.
NOTES
[1] The prompt, painstaking and cooperative action taken by all counsel to assist in the solution of this dilemma is much appreciated by the court.
[2] This court will refer to Satz v. Perlmutter, 362 So.2d 160 (Fla. 4th DCA 1978), as Perlmutter I. As to the supreme court's version of Satz v. Perlmutter, 379 So.2d 359 (Fla. 1980), this court will refer to it as Perlmutter II.