Joanne McKENZIE, et al., Plaintiffs,

v.

**DOCTORS' HOSPITAL OF HOLLYWOOD, INC., et al., Defendants.**

**No. 90–6961–CIV.**

United States District Court, S.D. Florida.

June 24, 1991.

Carolyn R. Wah, Brooklyn, N.Y. and William E. Hoey, Jupiter, Fla., for plaintiffs.

Jonathan J. Davis, Fort Lauderdale, Fla., for defendants Jay Cohen and Atkinson, Jenne, Diner, Stone & Cohen, P.A.

Joseph P. Metzger, West Palm Beach, Fla., for defendant Dr. Arcadio J. Oliva.

Morton J. Morris, Hollywood, Fla., for defendant Dr. Gerald Hoffman.

Diane M. Van Ness, Hollywood, Fla., for defendants Sandra Chadwick, Doctors' Hosp. of Hollywood, Inc. and Alan Weinstein.

## FINAL ORDER DISMISSING CASE

GONZALEZ, District Judge.

THIS CAUSE has come before the Court upon several matters.

Defendants Doctors' Hospital of Hollywood, Inc. ("the Hospital") and its administrator, Alan Weinstein ("Weinstein") have joined together in moving to dismiss the plaintiffs' complaint. Defendants Sandra Chadwick ("Chadwick") assistant hospital administrator, and Dr. Gerald Hoffman ("Hoffman") have filed an individual motion to dismiss.

In addition, defendants Jay Cohen, Esq. ("Cohen"), and Atkinson, Jenne, Diner, Stone & Cohen, P.A. ("Atkinson, Jenne, et al.") have filed a motion to dismiss the plaintiffs' complaint, or for a more definite statement. Defendant Dr. Arcadio J. Oliva ("Oliva") has filed a motion to dismiss the plaintiffs' complaint, and a motion for a more definite statement.

The Court, by its Order of April 9, 1991, has stayed all discovery in this case.

Plaintiffs allege that this Court has federal question jurisdiction arising under the laws of the United States. The defendants are alleged to have deprived the plaintiffs of their constitutional rights pursuant to 42 U.S.C. §§ 1983, 1985, 1986, and 1988. The plaintiff also alleges that the Court has pendant state law jurisdiction over this matter. Complaint, ¶¶ 2–3.

FACTS

On December 5, 1989, plaintiff Joanne McKenzie ("McKenzie") was hospitalized at defendant Doctor's Hospital of Hollywood, Inc. McKenzie is one of Jehovah's Witnesses, and because she suffers from a certain medical condition, McKenzie and her husband, the remaining co-plaintiff, allegedly articulated to the Hospital that she did not want to be given a blood transfusion.[1] The plaintiffs have alleged that they informed the Hospital several times that they did not want a blood transfusion for Joanne, and personnel from the Hospital assured the plaintiffs that no blood transfusion would be used. Complaint, ¶¶ 16–23.

On December 7, 1989, the Hospital petitioned the Circuit Court for the Seventeenth Judicial Circuit in and for Broward County, Florida for an *ex parte* order granting the Hospital's motion to perform a blood transfusion. The petition was made through the Hospital's representatives defendants Weinstein and Chadwick, through the Hospital's doctors, Oliva and Hoffman, and through the Hospital's counsel, defendants Cohen and the law firm of Atkinson, Jenne, et al. Complaint, ¶¶ 24–25.

Although the plaintiffs were both conscious, they were not notified of the application before the Circuit Court, and their consent to any blood transfusion was not obtained. The Hospital presented the plaintiffs with the court order and informed the plaintiffs of their intention to give Joanne McKenzie a blood transfusion. Complaint, ¶¶ 27–31, 33.

Joanne McKenzie then left the Hospital and sought medical treatment at another institution. She alleges that she suffered additional injuries as a result of the defendants' actions. Complaint, ¶¶ 34–36. The injury claims comprise Counts Five through Twelve.

Counts One to Four of the plaintiffs' complaint allege that the plaintiffs' First, Third, Fourth, Fifth, Ninth and Fourteenth Amendment Rights were deprived, that the defendants conspired to deprive the plaintiffs of these rights, and that the defendants failed to prevent said deprivation. These Federal Counts are alleged against all defendants.

---

**1.** Receiving a blood transfusion is a serious sin for someone of the plaintiffs' faith. Jehovah's Witnesses believe that the Almighty God Jehovah commands Christians to abstain from blood transfusions. *See, e.g. Jehovah's Witnesses in State of Wash. v. King County Hospital,* 278 F.Supp. 488, 502 (W.D. Wash.1967), *aff'd,* 390 U.S. 598, 88 S.Ct. 1260, 20 L.Ed.2d 158 (1968).

The remainder of the plaintiffs complaint consists of state common law and statutory claims. For example, Counts Five and Six allege that the plaintiffs' rights under Florida's Constitution were deprived. Counts Seven and Eight allege Intentional Infliction of Emotional Distress. Counts Nine and Ten allege Negligent Infliction of Emotional Distress. Finally, Counts Eleven and Twelve allege that the defendants breached certain fiduciary duties.

## DISCUSSION

■ The defendants have made a motion to dismiss the case for failure to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). A complaint should not be dismissed unless it appears beyond a doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The allegations of the claim must be taken as true. *Cruz v. Beto*, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972).

The plaintiffs have made a "short and plain statement of the claim." *See, e.g. Conley*, 355 U.S. at 41, 78 S.Ct. at 99. However, it is apparent to this Court "to a certainty that no relief can be granted under any set of facts that can be proved in ..." the complaint. *Id.* at 45, 78 S.Ct. at 101. In fact, there does not appear to be a true controversy present.

### 1. *Jurisdiction under 42 U.S.C. § 1983*

■ The complaint alleges that the Hospital's doctors and administrators acted pursuant to an order from a Broward County Circuit Court Judge in informing Joanne McKenzie that they were authorized to issue her a blood transfusion despite her objection. The Circuit Court's order, of course, was obtained as a result of the efforts of the Hospital's counsel.

Because these defendants acted pursuant to, and under the authority of, the Circuit Court order, this Court's subject matter jurisdictional requirement has been met. The defendants were effectively acting under the color of state law. *See, e.g. Jeho-*

*vah's Witnesses in State of Wash. v. King County Hospital*, 278 F.Supp. 488, 497–498 (W.D.Wash.1967), *aff'd*, 390 U.S. 598, 88 S.Ct. 1260, 20 L.Ed.2d 158 (1968).[2]

### 2. *Dismissal Counts One through Four*

The issue before this Court is whether a competent adult may refuse a blood transfusion. Specifically, plaintiffs ask this Court to determine that the individual's constitutional rights of privacy and religious freedom have been impaired.

### A. A Jehovah Witness' Right to Refuse a Blood Transfusion

Florida Supreme Court, of course, has held that a competent adult has the right to refuse a blood transfusion. *Public Health Trust of Dade County v. Wons*, 541 So.2d 96, 97 (Fla.1989). With that premise in mind, the Court must now turn to plaintiffs' allegations of constitutional injuries.

### B. Mr. McKenzie's Lack of Standing

■ To allege standing, the party seeking relief must allege the constitutional minimum requirements: (1) a legally cognizable injury, (2) caused by the challenged conduct or law, and (3) judicial redressability. *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984).

■ Mr. McKenzie, the husband of the individual who was subject to hospital care, did not sustain any constitutional injury. The facts indicate that Mr. McKenzie's constitutional rights have not been violated, and only the constitutional rights of Mrs. McKenzie are in question. It was Mrs. McKenzie's refusal of a blood transfusion that led to the instant controversy. Mr. McKenzie, therefore, lacks the requisite standing to be a part of this lawsuit as so far as the federal claims are concerned.

### C. Mrs. McKenzie did not suffer any constitutional injury

■ Florida's Supreme Court has outlined four instances where an individual's right to refuse medical treatment may be

---

**2.** This case was decided by a special three judge panel pursuant to 28 U.S.C. §§ 2281, 2284.

overridden by compelling state interests. They include: (1) the preservation of the individual's life,[3] (2) the protection of innocent third parties,[4] (3) the prevention of suicide,[5] and (4) the maintenance of the ethical integrity of the medical profession.[6] *Wons,* 541 So.2d at 97. *See also, Satz v. Perlmutter,* 379 So.2d 359 (Fla.1980), *aff'g, Id.,* 362 So.2d 160, 162 (Fla. 4 D.C.A. 1978).

This case, however, does not call for such an exception. In this matter, the Hospital seeking to administer a blood transfusion *did not* eventually treat a Jehovah's Witness with a blood transfusion. Plaintiff McKenzie, in this case, declined the transfusion and left under her own volition.

The defendants in no way impaired or prevented McKenzie from executing her *federal* constitutional rights. In fact, the defendant respected McKenzie's wishes and religious demands, and did not interfere with her wish to refuse a blood transfusion. Again, no blood transfusion was administered to McKenzie.

Nor is this Court asked to force the plaintiffs to receive a blood transfusion against their will. Deference to the plaintiffs' wishes was given by the defendants, and the plaintiffs were allowed to pursue their religious beliefs outside of the Hospital.

Whether McKenzie or her husband suffered physical or emotional injuries, as stated in Counts Five through Twelve, are not for this Court to determine. Those alleged injuries, as will be demonstrated later, are for the state courts to evaluate.

This Court finds that there have been no *federal* constitutional violations. Counts One through Four, therefore, may be dismissed.

### D. Conspiracy Allegations

■ In addition, the plaintiffs' claims of a conspiracy are not apparent.

A conspiracy is an agreement between two or more individuals, where one individual acts in furtherance of the objective of the conspiracy, which causes an injury to a person or property, or deprives a person of exercising any right or privilege as a United States citizen. A conspiracy under § 1983 must further allege that the injury must be caused by a person who is a state actor, or whose conduct is chargeable to the state. *Scott v. Dixon,* 720 F.2d 1542, 1545 (11th Cir.1983), *cert. denied,* 469 U.S. 832, 105 S.Ct. 122, 83 L.Ed.2d 64 (1984).

The plaintiffs have not stated, or alleged any such interaction between the co-defendants to establish a cause of action for conspiracy. The conspiracy claims, therefore, may be dismissed.

### 3. *Dismissal of Counts Five through Twelve*

■ In Counts Five through Twelve of their complaint, plaintiffs allege causes of action involving state common law and statutory issues. As these pendant state claims do arise out of the "common nucleus of operative fact", this Court has the power to adjudicate the claims. *United Mine Workers of America v. Gibbs,* 383 U.S.

---

**3.** Perhaps the most significant of the four state interests is the preservation of life. *Wons,* 541 So.2d at 100 (Ehrlich, C.J., concurring specially), *citing, In re Conroy,* 98 N.J. 321, 486 A.2d 1209, 1223 (1985). The state's interests usually peak when the patient's life is in question. *Wons,* 541 So.2d at 100.

**4.** In *Wons,* Florida's Supreme Court upheld a mother's right to refuse a blood transfusion, despite the fact that she had two minor children. The court reasoned that the children would have a guardian, the surviving parent. The court held that "the state's interest in maintaining a home with two parents for the minor children does not override [an individual's] constitutional rights of privacy and religion." *Wons,* 541 So.2d at 100.

**5.** The cases have drawn a distinction between suicides or wishes to die, and wishes not to live. Death by refusing a blood transfusion would be of natural causes, not suicide. *Wons,* 541 So.2d at 100.

**6.** Recognition of an individual's right to refuse necessary treatment has been seen as consistent with modern medical ethics. *Wons,* 541 So.2d at 101, *citing, Superintendent of Belchertown State School v. Saikewicz,* 373 Mass. 728, 370 N.E.2d 417, 426–427 (1977). Indeed, protection of the medical profession's ethical integrity alone could never override an individual's constitutional rights. *Wons,* 541 So.2d at 101.

715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Pendant jurisdiction is "a doctrine of discretion," a power that need not be exercised in every case, and not a plaintiff's right. *Id.* at 726, 86 S.Ct. at 1139.

The *Gibbs* Court listed a number of factors that a federal court may consider in deciding whether or not to keep state law claims. Among them are the interest in judicial economy, convenience, fairness to the litigants, whether state issues predominate, the likelihood of jury confusion and whether or not the federal claims have been dismissed prior to trial. *Id.*

■ In the instant case, the plaintiff's federal claims will be dismissed before trial, and state law claims of assault and battery will predominate. The state claims should also be dismissed. *Id.*[7]

The Court has reviewed the motion, the record, and the being otherwise duly advised, it is hereby:

ORDERED and ADJUDGED that, for the foregoing reasons, the motions to dismiss filed by all defendants will be GRANTED, and this cause and the same will be DISMISSED.

DONE AND ORDERED.

---

7. In *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988), the plaintiffs filed federal and state law claims in state court and then removed to federal court. The federal claims were all dismissed prior to trial. The district court then remanded the pendant state claims to state court, rather than dismiss the state claims under *Gibbs. Id.* 108 S.Ct. at 619–620.

The Supreme Court reasoned that the district court had the power to retain jurisdiction over the state law claims once the federal law claims were dismissed. The district court, however, also had a continuing duty to consider whether it should exercise its jurisdiction. The Court held that in situations where the plaintiff's filed their claims in state court and then removed to federal court, the claims could be remanded to state court, instead of dismissed. Plaintiff, unfortunately, does not have that option in this case as she originally filed her case in federal court.