678 So.2d 455 (1996)
Tina HARRELL, Appellant,
v.
ST. MARY'S HOSPITAL, INC., Appellee.
No. 95-2172.
District Court of Appeal of Florida, Fourth District.
August 14, 1996.
*456 Donald T. Ridley, Brooklyn, New York and William E. Hoey, Jupiter, for appellant.
Jeffrey C. Fulford and Casey D. Shomo of Bobo, Spicer, Ciotoli, Fulford, Bocchino, DeBevoise & LeClainche, P.A., West Palm Beach, for appellee.
Barry E. Krischer, State Attorney, and Kenneth J. Selvig, Assistant State Attorney, West Palm Beach, for Intervenor-State of Florida.
Washington M. Quinones, Sebring, for Amicus Curiae-Watchtower Bible and Tract Society of New York, Inc.
Andrew H. Kayton, Miami, for Amicus Curiae-American Civil Liberties Union Foundation of Florida, Inc.
Catherine Weiss and Laura K. Abel, New York City, for Amicus Curiae-Reproductive Freedom Project American Civil Liberties Union Foundation.
WARNER, Judge.
The appellee, St. Mary's Hospital, filed an emergency petition in circuit court regarding the health care of the appellant, Tina Harrell. Mrs. Harrell, a Jehovah's Witness, was six months pregnant when doctors discovered a life-threatening blood condition which could rapidly deteriorate and place both her life and the life of the fetus in jeopardy. Because of her religious beliefs, Mrs. Harrell objected to any blood transfusion. After an emergency hearing where the Harrells could not summon an attorney, the court ruled that a blood transfusion could be given to Mrs. Harrell if it was necessary to save the life of the fetus and that after the child was born, a blood transfusion could be given to the child if necessary to save the child's life. However, the child was delivered by Caesarian section and died two days later. No blood transfusion was given to Mrs. Harrell or to the child. As a result, St. Mary's Hospital and the State claim that the appeal of the trial court's order is moot. Due to the hospital's serious misunderstanding about its standing to bring such proceedings under In re Dubreuil, 629 So.2d 819 (Fla.1993), we address the issue of standing as capable of repetition yet evading review.[1]
It is unquestioned that in considering whether a patient may forego medical treatment, several state interests must be addressed. See Dubreuil; Public Health Trust of Dade County v. Wons, 541 So.2d 96 (Fla.1989), limited by Dubreuil. The first issue addressed in Dubreuil was whether the medical provider has standing to assert these state interests in a petition to require treatment for its patient. The supreme court concluded that it did not. We can do no better than to reprint that portion of the Dubreuil opinion.
We begin our analysis with the overarching principle that article I, section 23 of the Florida Constitution guarantees that "a competent person has the constitutional right to choose or refuse medical treatment, and that right extends to all relevant *457 decisions concerning one's health." In re Guardianship of Browning, 568 So.2d 4, 11 (Fla.1990); see also In re T.W., 551 So.2d 1186 (Fla.1989); Public Health Trust of Dade County v. Wons, 541 So.2d 96 (Fla.1989). In cases like this one, the privacy right overlaps with the right to freely exercise one's religion to protect the right of a person to refuse a blood transfusion because of religious convictions. Art. I, §§ 3, 23, Fla. Const.; Wons.

In cases where these rights are litigated, a party generally seeks to invoke the power of the State, through the exercise of the court's judicial power, either to enforce the patient's rights or to prevent the patient from exercising those rights. We have set forth the following guiding principles:
The state has a duty to assure that a person's wishes regarding medical treatment are respected. That obligation serves to protect the rights of the individual from intrusion by the state unless the state has a compelling interest great enough to override this constitutional right. The means to carry out any such compelling state interest must be narrowly tailored in the least intrusive manner possible to safeguard the rights of the individual.

Browning, 568 So.2d at 13-14 (footnote omitted); see also Wons, 541 So.2d at 96; In re T.W., 551 So.2d at 1192-93. Among the factors we have identified that could be considered in determining whether to give force to a patient's right to refrain from medical treatment is the protection of innocent third parties, see, e.g., Browning, 568 So.2d at 14, often discussed in terms of "abandonment." See, e.g., Wons, 541 So.2d at 97 (Ehrlich, C.J., concurring specially).
The arguments made in this Court present two basic issues. First, we must determine whether it is appropriate for a hospital to assert the state interests in an attempt to defeat a patient's decision to forgo emergency medical treatment.
...
Patricia argues that Memorial Hospital should not have intervened in her private decision to refuse a blood transfusion. She claims that the "State" has never been a party in this action, has not asserted any interest, and that the hospital has no authority to assume the State's responsibilities.
....
We conclude that a health care provider must not be forced into the awkward position of having to argue zealously against the wishes of its own patient, seeking deference to the wishes or interests of nonpatientsin this case Patricia's husband, her brothers, the children, and the State itself. Patients do not lose their right to make decisions affecting their lives simply by entering a health care facility. Despite concededly good intentions, a health care provider's function is to provide medical treatment in accordance with the patient's wishes and best interests, not as a "substitute parent" supervening the wishes of a competent adult. Accordingly, a health care provider must comply with the wishes of a patient to refuse medical treatment unless ordered to do otherwise by a court of competent jurisdiction. A health care provider cannot act on behalf of the State to assert the state interests in these circumstances. This is an appropriate role for the State to play directly, not through the legal artifice of a special taxing district.
"Additionally, it should be recognized that in many instances, the hospital's agents will understandably be primarily interested in protecting the hospital's interests, and may not represent all of the factors recognized in Wons." Dubreuil, 603 So.2d at 541. Moreover, placing the State's burden on the health care provider would be even more inappropriate where the health care provider is a private, rather than public, entity.
Therefore, we recede from Wons to the extent that it may be read to put any burden of proof on the health care provider with respect to asserting the state interests. That heavy burden must be borne directly by the State.
We recognize that in situations like these, health care providers generally have sought judicial intervention to determine their rights and obligations to avoid liability. In John F. Kennedy Memorial Hospital, *458 Inc. v. Bludworth, 452 So.2d 921, 926 (Fla.1984), we held that health care providers, when terminating life support in accordance with their patient's wishes, are relieved of potential civil and criminal liability as long as they act in good faith, and that no prior court approval of the health care provider's action is required. We believe the same principles apply here. When a health care provider, acting in good faith, follows the wishes of a competent and informed patient to refuse medical treatment, the health care provider is acting appropriately and cannot be subjected to civil or criminal liability.

Although this procedure absolves the health care facility of any obligation to go to court, we recognize the need for the State and interested parties to have the opportunity to seek judicial intervention if appropriate. Accordingly, a health care provider wishing to override a patient's decision to refuse medical treatment must immediately provide notice to the State Attorney presiding in the circuit where the controversy arises, and to interested third parties known to the health care provider. The extent to which the State Attorney chooses to engage in a legal action, if any, is discretionary based on the law and facts of each case. This procedure should eliminate needless litigation by health care providers while honoring the patient's wishes and giving other interested parties the right to intervene if there is a good faith reason to do so. Cf. In re Guardianship of Browning, 568 So.2d 4, 16 (Fla.1990) (courts are open to adjudicate legitimate questions pertaining to written or oral instructions expressing a patient's wishes).
Dubreuil, 629 So.2d at 822-24 (footnotes omitted, emphasis supplied).
We reject the hospital's contention that it had standing to seek judicial intervention to determine its "obligations, duties, and responsibilities" concerning the delivery of medical health care and treatment. As in Dubreuil, a hospital is absolved from criminal and civil liability when it acts in conformance with the dictates of that opinion. In the instant case, we can only construe St. Mary's petition as one which seeks to override the patient's refusal for medical treatment, namely a blood transfusion, which Mrs. Harrell competently and conscientiously refused. Wishing to override Mrs. Harrell's decision to refuse medical treatment, St. Mary's was required to immediately provide notice to the State Attorney so that the State Attorney could determine whether it would take legal action to compel the transfusion.
St. Mary's represented to the trial court that the State Attorney had advised them in the past that their office would not pursue these matters and that the hospital should pursue such matters itself.[2] The court obviously had concerns as to whether the State Attorney had been notified, but the court was not apprised that Dubreuil requires the State Attorney, and not the hospital, to bring an action to assert the state's interests involved in treatment decisions. Instead the trial court provided only that the State Attorney have after-the-fact notice of the proceedings.
Misled by the hospital's erroneous view of Dubreuil, the trial court erred in considering the hospital's emergency petition for treatment. The hospital had no standing to bring such a petition, and the trial court should have dismissed it sua sponte.
Thus, but for the fact that the issue is now moot, we would have reversed the trial court's order for lack of standing of the petitioning party.
GUNTHER, C.J. and FARMER, J., concur.
NOTES
[1] Because we decide this case on the standing issue, we do not address the substantive issues raised as to the state's interest in compelling a pregnant woman to undergo a blood transfusion. The State Attorney was not a party to these proceedings below, and the state's interest was not asserted either in the trial court or in this appeal.
[2] It appears that the hospital attorney's recollection of his conversations and writings with the State Attorney is in error. A letter from the State Attorney to the hospital's attorney in 1994 spelled out Dubreuil procedures and made it clear that where an adult patient wanted to withhold lifesaving procedures, the hospital should immediately provide the State Attorney's office with notice, and that office would make a case by case determination consistent with the pronouncement of Dubreuil. Nowhere in the letter was it suggested that the State Attorney would not pursue "these cases," nor is there a suggestion that the hospital should pursue its own action.